# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

KENT & SMITH HOLDINGS, L.L.C.　　　　　　　　　　CIVIL ACTION

VERSUS　　　　　　　　　　　　　　　　　　　　　　16-333-SDD-RLB

HDI GLOBAL INSURANCE COMPANY

## RULING

This matter is before the Court on the Cross-*Motions for Summary Judgment* by Plaintiff Kent & Smith Holdings, L.L.C. ("Plaintiff")[1] and Defendant, HDI Global Insurance Company ("Defendant").[2] Plaintiff and Defendant have filed *Oppositions*[3] to each other's motions, and Defendant filed a *Reply*.[4] For the following reasons, the Court finds that the Motion by Defendant should be GRANTED, and the Motion by Plaintiff should be DENIED.

## I.　BACKGROUND

Plaintiff is a Louisiana-based construction support and logistics company that performs project work for contractors throughout the Gulf South.[5] Defendant issued Plaintiff a general commercial liability insurance policy.[6] The stated policy period was July 1, 2014 to July 1, 2015.

In October 2015, Lanny and Valerie Lewis sued Plaintiff in the 19th Judicial Court for the Parish of East Baton Rouge. The Lewises' Petition claims that they agreed to let

---

[1] Rec. Doc. No. 20.
[2] Rec. Doc. No. 22.
[3] Rec. Doc. Nos. 26 and 28.
[4] Rec. Doc. No. 31.
[5] Rec. Doc. No. 19, p. 5.
[6] Rec. Doc. No. 1-2, p. 7.
47923

Plaintiff deposit dirt from an excavation project on their land, on the condition that the dirt was free of "big pieces of concrete"[7] and other debris. When the Lewises later found "piles of crap"[8] and concrete on their property, they allegedly asked Plaintiff to remove the unwanted debris. When the parties failed to agree on a plan to remove the debris, the Lewises filed their suit, claiming that Plaintiff deposited debris-laden dirt contra the terms of their oral contract. The Lewises' alleged damages are twofold. First, they seek a judgment "declaring [Plaintiff] in breach of contract and requiring specific performance for the removal of all concrete, pipe, re-bar and other trash from the property,"[9] or, in the alternative, "a money judgment for the expense of removing the debris deposited on the property by defendants,"[10] which they estimate would cost $150,000.[11] Second, the Lewises seek a "money judgment for. . .lost profits and depreciated value,"[12] alleging that Plaintiff's failure to remove the debris caused T4 Group, a developer who had agreed to purchase the land for more than $2.7 million, to terminate their purchase agreement with the Lewises.[13]

On March 7, 2016, after examining the allegations in the Lewis lawsuit, Defendant denied Plaintiff's coverage request, informing Plaintiff of its conclusion that the Lewises' allegations did not set forth claims that were coverable under the policy and that even if they did, coverage was excluded by the "Damage to Impaired Property Or Property Not Physically Injured" Exclusion in the Policy.[14] Following that denial, Plaintiff filed a Petition

---

[7] Rec. Doc. No. 19, p. 19.
[8] Rec. Doc. No. 19, p. 27.
[9] Rec. Doc. No. 20-4, p. 4.
[10] *Id.* at p. 3-4, ¶ 18.
[11] *Id.* at p. 4, ¶ 17.
[12] *Id.* at p. 3-4, ¶ 18.
[13] *Id.* at p. 3 at ¶ 15 and 16.
[14] Rec. Doc. No. 20-5, p. 4, "Analysis."
47923

for Declaratory Judgment in the Eighteenth Judicial District Court for the Parish of West Baton Rouge, requesting a judgment of coverage and a defense under the policy, plus extracontractual penalties for Defendant's alleged arbitrary and capricious declination of coverage. Defendant then removed the matter to this Court under 28 U.S.C. § 1332.[15]

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[16] In assessing whether a dispute to any material fact exists, the Court considers all of the evidence in the record but must refrain from making credibility determinations or weighing the evidence.[17] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[18] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[19] However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[20]

---

[15] This court has jurisdiction pursuant to 28 USC § 1332.
[16] Fed. R. Civ. P. 56(a).
[17] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
[18] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (5th Cir. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).
[19] *Rivera v. Houston Independent School Dist.*, 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[20] *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
47923

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[21] All reasonable factual inferences are drawn in favor of the nonmoving party.[22] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[23] "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint.""'[24]

### B. Duty to Defend

Defendant asserts that it is entitled to summary judgment regarding its duty to defend "because no coverage exists pursuant to the HDI Policy for claims asserted against [Plaintiff] in the Underlying Action."[25] Because subject matter jurisdiction in this case is based on diversity of citizenship, the Court applies the law of the forum state. In Louisiana, the duty to defend analysis "begins with an examination of whether any of the facts pleaded in the complaint possibly fall within matters covered under the insuring clause. The insured bears the burden on this point."[26] Under Louisiana's "Eight Corners Rule," duty to defend must be analyzed by applying the allegations of the complaint

---

[21] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
[22] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[23] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[24] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).
[25] Rec. Doc. No. 22-1, p. 1.
[26] *Martco Ltd. Partnership v. Wellons, Inc.*, 588 F.3d 864 (5th Cir. 2009).
47923

without resort to extrinsic evidence.[27] The insurer has a duty to defend unless the allegations in the underlying complaint "unambiguously preclude coverage."[28] Summary judgment declaring a lack of coverage under an insurance policy is not proper unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded.[29] So, the duty to defend inquiry turns on (1) whether the Lewis lawsuit alleged a potentially covered event that would trigger Defendant's duty to defend under the Policy, and (2) whether that alleged triggering event fell within an exclusion of the policy.

1. The Policy Language

Plaintiff argues that the Policy provides coverage in connection with the Lewis lawsuit because the dumping of debris caused "property damage" that is covered under the Policy. Specifically, the Policy states that Defendant "will pay those sums the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies."[30] The Policy defines "property damage" as follows:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.[31]

Plaintiff contends that both prongs of the definition could apply to the Lewises'

---

[27] *Adams v. Frost*, 43,503 (La. App. 2 Cir. 8/20/08), 990 So. 2d 751, 756, *writ denied*, 2008-2438 (La. 1/30/09), 999 So. 2d 755, and *writ denied*, 2008-2465 (La. 1/30/09), 999 So. 2d 755.
[28] *Elliott v. Continental Casualty Company,* 2006–1505 (La.2/22/07), 949 So.2d 1247.
[29] *Id.* at 1250; *Reynolds v. Select Properties, Ltd.,* 93–1480 (La.4/11/94), 634 So.2d 1180; *Palmer v. Martinez*, 45,318 (La.App.2d Cir.7/21/10), 42 So.3d 1147, *writs denied*, 2010–1952, 2010–1953, 2010–1955 (La.11/5/10), 50 So.3d 804, 805.
[30] Rec. Doc. No. 20-3, p. 5.
[31] *Id.* at p. 19.

allegations.

### a. The "Physical Injury" Prong of "Property Damage"

The term "physical injury" in Clause (a) is not defined in the Policy.[32] In Plaintiff's view, the Lewis allegations fit comfortably within a plain reading of the term "physical injury" because the dumping of unwanted debris "improperly altered"[33] the Lewises' land. The term "improper alteration" does not appear in the Policy, and Plaintiff provides no support for its contention that "improper alteration" is synonymous with "physical injury."

Faced with a similar issue, the Louisiana First Circuit Court of Appeal relied on Webster's Dictionary to clarify the meaning of "physical injury" where it was not defined in an insurance policy. "'Physical' is 'of or relating to natural or material things as opposed to things mental, moral, spiritual, or imaginary';" the court wrote, "and 'injury' means 'an act that damages, harms, or hurts.'"[34] The presence of the debris on the Lewises' land is certainly physical. But Plaintiff has not shown that there is any allegation of *injury* to the land itself.

Plaintiff further argues that the Lewises did not need to explicitly assert a claim for "property damage" as such in order to trigger coverage for property damage. It is true that the law does not require a formal recitation of the words "property damage," but that does not change the fact that the Lewis lawsuit fails to allege any physical harm beyond the temporary presence of the unwanted debris. In fact, Plaintiff points to no allegation in the Lewis Petition that specifically alleges a physical injury to their land.

---

[32] Rec. Doc. No. 22-1, p. 13 and Rec. Doc. No. 20-3.
[33] Rec. Doc. No. 20-1, p. 5.
[34] *PCS Nitrogen Fertilizer, L.P. v. U.S. Filter/Arrowhead, Inc.*, 2001-2577 (La. App. 1 Cir. 11/8/02), 834 So. 2d 456, 459.
47923

In comparison, allegations that Louisiana courts have found triggered coverage for "property damage" due to "physical injury" include a claim for "physical degrading of the infrastructure"[35] at a plant, "damage to piping and other plant components due to [a] pump's excessive vibration,"[36] damage to concrete caused by the removal of defective bolts,[37] and homes "damaged by excessive differential settlement of the foundations."[38] Similarly, a petition that described "damage to the gypsum wall board panels, tape and joint compound, interior paint finishes, vinyl base boards, and the carpet"[39] led the Louisiana Fourth Circuit Court of Appeals to conclude that "[the plaintiff] sufficiently alleged that there may have been damage to property . . . thereby triggering coverage under the insuring agreement."[40] All of the above allegations, though pleaded in a relatively general manner, still offered more evidence of "physical injury" than is present in the Lewis Petition.

The United States Court of Appeals for the Fifth Circuit considered the issue of what constitutes "physical injury" to land in *Selective Ins. Co. of Southeast v. J.B. Mouton & Sons, Inc.*[41] There, the court affirmed the Western District of Louisiana's determination that the construction of an office building on land over the objection of the owner was not a "physical injury" to the land that was sufficient to trigger the insurer's duty to defend.[42]

---

[35] *Martco* at 873.
[36] *Gaylord Chem. Corp. v. ProPump, Inc.,* 1998-2367 (La. App. 1 Cir. 2/18/00), 753 So. 2d 349, 352 n.2.
[37] *Superior Steel, Inc. v. Bituminous Cas. Corp.,* 415 So. 2d 354, 356 (La. Ct. App. 1982)
[38] *Korossy v. Sunrise Homes, Inc.*, 94-473 (La. App. 5 Cir. 3/15/95), 653 So. 2d 1215, *writ denied*, 95-1536 (La. 9/29/95), 660 So. 2d 878, and *writ denied*, 95-1522 (La. 9/29/95), 660 So. 2d 878.
[39] *Stewart Interior Contractors, L.L.C. v. Metalpro Indus., L.L.C.,* 2007-0251 (La. App. 4 Cir. 10/10/07), 969 So. 2d 653, 662.
[40] *Id.*
[41] 954 F.2d 1075 (5th Cir. 1992).
[42] *Id.* at 1079, ("Furthermore, neither deeding land to a partnership, constructing a building on land, nor giving of land in payment suggests 'physical injury to or destruction of tangible property' sufficient to trigger a duty to defend.").
47923

If the construction of an entire office building, which would likely be more onerous to remove than the debris on the Lewises' land, is not a "physical injury" to land under Louisiana law, neither is the presence of concrete, re-bar, and other trash.

Outside of the insurance context, Louisiana courts have recognized "injury to land" where, for example, a road destroyed the land owner's carefully constructed system of drainage ponds.[43] In a Fifth Circuit case applying Mississippi law, the court recognized a claim for injury to land where the "contents of slush pits were bulldozed onto fertile pastures and cultivated fields, destroying live springs and creating latent hazards which ultimately resulted in destruction of farm equipment; sludge and salt water were discharged onto the lands and into the streams; fences were destroyed, roads negligently built, fires set out and transmitted to timber, and other similar destructive acts were performed"[44] by the lessee of a tract of land. Clearly, "physical injury" to land generally goes beyond the presence of objects that could, like the debris on the Lewises' land, be picked up and carried away.

Overall, even considering the Supreme Court of Louisiana's holding that "liability insurance policies should be interpreted to effect, rather than to deny coverage,"[45] the Court finds that Plaintiff has failed to show that there is a genuine issue of material fact with respect to coverage for "property damage" due to "physical injury." Plaintiff's claim that the Lewis allegations demonstrate "physical injury" under the Policy is conclusory and without support in Louisiana law. "Conclusory allegations unsupported by specific

---

[43] *Bourdier v. Morgan's L. & T.R. Co.,* 35 La. Ann. 947, 950 (1883).
[44] *King v. California Co.*, 224 F.2d 193, 195 (5th Cir. 1955).
[45] *Yount v. Maisano*, 627 So.2d 148, 151 (La. 1993).
47923

facts … will not prevent the award of summary judgment."[46] The Court finds in the alternative that, even if "property damage" were alleged in the Lewis lawsuit, coverage would be precluded by the Policy Exclusion discussed *infra*.

### b. The "Loss of Use" Prong of "Property Damage"

Plaintiff next attempts to prove coverage via Clause (b) of the Insuring Agreement cited above, which defines property damage in the alternative as the "loss of use of tangible property that is *not* physically injured."[47] Plaintiff claims that because "loss of use" is not defined in the Policy, "it must be given its generally prevailing meaning."[48] On its face, the Lewis lawsuit makes no allegation of "loss of use," only of "lost profits or depreciated value"[49] due to the terminated purchase agreement with T4 Group. The Lewises' loss of anticipated profits from the sale is only a coverable allegation of "property damage" if it is, as the Policy requires, a "loss of use of tangible property."

Defendant argues that the lost profits are not a "loss of use of tangible property," citing the Fifth Circuit case *Snug Harbor, Ltd. v. Zurich Ins.* for the proposition that "purely economic losses – for example, loss of the use of money a claimant would have received but for the insured's negligence – do not constitute 'the loss of use of tangible property."[50] As Plaintiff correctly notes, the *Snug* court was applying Texas law. However, Louisiana courts have arrived at similar holdings when applying Louisiana law.

---

[46] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).
[47] Rec. Doc. No. 20-3, p. 19 (emphasis added).
[48] Rec Doc. No. 20-1, p. 5.
[49] Rec. Doc. 20-4, p. 4.
[50] 968 F.2d 538, 542 (5th Cir. 1992).
47923

In *Massey v. Decca Drilling Co.*,[51] the Louisiana Second Circuit Court of Appeals considered the case of an oil well that was littered with debris in the form of "bolts, tubing, and other metal pieces"[52] by a contractor hired by the well's owner. The owner of the well sued, seeking, among other things, money damages because the debris and subsequent delay to remove it "caused him to lose his option . . . to drill successive wells."[53] The court held that, under Louisiana law, that loss of future opportunity for profit was not a "loss of use of tangible property," explaining that:

> a mineral right is defined as an incorporeal immovable. Therefore, we find that the mineral rights at issue may be properly categorized as intangible, not tangible. Because they are not tangible, their loss is not included within the policy definition of "property damage," and the policies provide no coverage . . . Inasmuch as the policies provide coverage only for damage to "tangible property," those damages for loss of mineral rights and future profit must be set aside.[54]

The *Massey* case is highly analogous to the case herein and requires the conclusion that the Lewises' claim for "lost profits and depreciated value" is also an attempt to recover for loss of use of *intangible* property. The Lewises' land itself is a corporeal under Louisiana Civil Code Article 461, which defines corporeals as things that "have a body, whether animate or inanimate, and can be felt or touched." By contrast, both the Lewises' right to sell the land and the purchase agreement with T4 Group are incorporeals -- "things that have no body, but are comprehended by the understanding, such as the rights of inheritance, servitudes, obligations, and right of intellectual

---

[51] 25,973 (La. App. 2 Cir. 12/7/94), 647 So. 2d 1196, 1205–06, *writ denied*, 95-0069 (La. 4/21/95), 653 So. 2d 563, and *writ denied,* 95-0411 (La. 4/21/95), 653 So. 2d 564, and *writ denied*, 95-0417 (La. 4/21/95), 653 So. 2d 564.
[52] *Id.* at 1199.
[53] *Id.* at 1200.
[54] *Id.* at 1205-1206.
47923

property."⁵⁵ The *Massey* court explained that incorporeals are equivalent to intangibles. As such, any loss of use associated with the Lewises' terminated purchase agreement is a loss of use of *intangible* property and therefore not covered under the Policy's "loss of use of tangible property" provision.

The *Massey* court's conclusion was reinforced by the Fifth Circuit in the *Selective Insurance* case discussed above⁵⁶. There, the court also considered whether insurance coverage for "loss of use of tangible property" existed when a land owner sued his contractor, alleging that he lost anticipated rental income due to the contractor's negligence. The contractor's insurer denied coverage, and the Fifth Circuit affirmed the lower court's finding that there was no coverage because the land owner's "claims of loss of future income [were] claims of damage to *intangible* property,"⁵⁷ not tangible property.⁵⁸

Precedent also suggests that, under Louisiana law, the right to have and use money only becomes tangible when the money is actually in one's possession. In *Innovative Hospitality Systems, LLC v. Abraham*,⁵⁹ the Louisiana Court of Appeals for the Third Circuit concluded that coverage for "property damage" did not exist when a plaintiff's checks were stolen, fraudulently issued, and cashed, because the cash that was given when the check was presented was not the plaintiff's *per se* – it was drawn from a pot of money at the bank, some share of which belonged to plaintiff. Such an abstract loss was

---

⁵⁵ La. C. C. Art. 461.
⁵⁶ *Supra* at n. 41.
⁵⁷ 954 F.2d 1075 (emphasis added).
⁵⁸ *See also*, *CMP Coatings, Inc. v. Tokyo Marine & Nichido Fire Ins. Co., LTD,* No. CIV.A. 10-4277, 2012 WL 3901625 (E.D. La. Sept. 6, 2012) ("the factual allegations and claimed damages in the underlying litigation clearly and unambiguously relate to economic losses . . .not to physical damage . . . In the underlying action, [plaintiff] alleges it has suffered financial damages in the form of lost profits, cost overruns, and cancellation of contract.")
⁵⁹ 2010-217 (La. App. 3 Cir. 4/6/11), 61 So. 3d 740, *writ denied*, 2011-0845 (La. 6/17/11), 63 So. 3d 1036.
47923

not a "loss of use of tangible property." "The cash," the court wrote, "was not what [plaintiff] lost. It lost the right to use its funds on deposit with its bank. The loss did not consist of tangible property. As such, [the insurer] does not afford [plaintiff] coverage for that loss."[60] Applying this reasoning to the instant case, the Lewises cannot have suffered a "loss of use of tangible property" because the profits from the sale of their land to T4 Group were not yet paid to them. In fact, the agreement was terminated. The "loss of use" suffered by the Lewises is one to their intangible right to sell the land and collect the profits.

Rarely, Louisiana courts have held to the contrary, finding that the loss of an expected future benefit can constitute a loss of use of tangible property. But those cases are distinguishable. For example, in *Dietrich v. Travelers Ins. Co.*,[61] the Louisiana First Circuit considered whether an employer's failure to enroll its employee in a benefit program she was entitled to could be "loss of use of tangible property" from the perspective of the employee who was left without insurance. The court found that it could. "Although the *right* to the benefits payable under the health and disability policy may be an intangible right," it wrote, "the actual benefits which would have been payable under the policy had Ms. Dietrich been properly enrolled in and covered by the policy constitute tangible property, i.e. money."[62]

*Dietrich* is distinguishable because there was no uncertainty as to whether the "tangible property, i.e. money" would flow to the employee upon her enrollment in the benefit plan. By contrast, the "Agreement to Purchase" executed by the Lewises and T4 Group does not create an immediate transfer of tangible money to the Lewises; to the

---

[60] *Id.* at 747.
[61] 551 So. 2d 64 (La. Ct. App. 1989), *writ denied*, 559 So. 2d 121 (La. 1990).
[62] *Id.* at 66.
47923

contrary, it contemplates the execution of an Act of Sale at a later date and provides for a contingency period during which T4 could cancel the agreement.[63] This delay and uncertainty surrounding the receipt of the proceeds of the sale makes the Lewises' expectation of a future benefit less tangible and more like an intangible right, "comprehended by the understanding."

In *Williamson v. Historic Hurstville Ass'n*,[64] the Louisiana Fourth Circuit Court of Appeals held that loss of profitability in the plaintiff's business venture constituted an injury to "tangible property" for purposes of determining insurance coverage. However, that holding was later criticized by the Fifth Circuit for its failure to apply Louisiana law. In a separate case, the Fifth Circuit chided the *Williamson* court because it "based its interpretation of the policy on a Webster's Dictionary definition of the term *tangible*" and "considered neither the Louisiana Supreme Court's declaration that tangible property is corporeal property nor any provision of the Louisiana Civil Code in reaching this conclusion."[65] Applied properly, the Fifth Circuit stated, Louisiana law dictates that the "loss of profits that do not flow from injury to tangible property is not a loss covered by [a] property damage provision."[66]

Summary judgment on the question of coverage is not properly granted unless there is no reasonable interpretation of the policy that gives rise to coverage under the facts. Based on Louisiana case law, there is no reasonable interpretation of the Policy here that supports a finding of coverage, because Plaintiff has not shown that the Lewis

---

[63] Rec. Doc. 20-4, p. 17, "Contingency Period," and p.18, "Act of Sale & Closing."
[64] 556 So.2d 103 (La.App. 4 Cir. 1/16/90).
[65] *Lamar Advertising Company v. Continental Cas. Co.*, 396 F.3d 654, 663 (5th Cir. 2005).
[66] *Id.*
47923

lawsuit contains an allegation that is colorably a claim for "property damage" as defined by the Policy.

### c. The Damage to Impaired Property Exclusion

Because no "property damage" has been successfully alleged, the Court need not address the alterative argument that the Damage to Impaired Property or Property Not Physically Injured Exclusion precludes coverage. Nevertheless, the Court finds that the Exclusion does preclude coverage for the Lewises' allegations. The Exclusion provides that the Policy does not apply to "property damage. . .arising out of a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms."[67] The Lewises allege that Plaintiff "breached their contract . . . by dumping concrete, pipe, re-bar and other trash on petitioner's property."[68] The Fifth Circuit has held that the duty to defend is assessed by assuming the allegations in the petition are true.[69] Therefore, assuming that the Lewises' allegation of breach of contract is true, it has the effect of triggering the Damage to Impaired Property or Property Not Physically Injured Exclusion to the Policy and releasing Defendant from any duty to defend.

Plaintiff insists that the Exclusion is inapplicable because it "is against public policy and is ambiguous."[70] The opposite is the case. These so-called "work-product exclusions" are commonplace and have been frequently upheld in Louisiana.[71]

---

[67] Rec. Doc. No. 20-3, p. 9.
[68] Rec. Doc. No. 20-4, p. 3 at ¶ 18.
[69] *Steptore v. Masco Construction Co., Inc.,* 643 So.2d 1213, 1218 (5th Cir. 1994).
[70] Rec. Doc. No. 20-1, p. 11.
[71] See, *Joe Banks Drywall & Acoustics, Inc. v. Transcontinental Ins. Co.,* 32,743 (La. App.2 Cir. 3/1/00), 753 So.2d 980; *Western World Ins. Co. v. Paradise Pools & Spas*, 93-723 (La. App. 5 Cir. 2/23/94), 633 So.2d 790; *Rivnor Properties v. Herbert O'Donnell, Inc.,* 92-1103 (La. App. 5 Cir. 1/12/94), 633 So.2d 735, writ denied, 94-1293 (La. 9/2/94), 643 So.2d 147*; Hallar Enterprises, Inc. v. Hartman*, 583 So.2d 883 (La. App. 1st Cir. 1991), *Castigliola v. Department of Community Development*, 538 So.2d 1139 (La. App. 5th Cir. 1989).
47923

The Supreme Court of Louisiana has held that there is no duty to defend where the petition alleges facts that exclude coverage.[72] Because the Court finds that the Lewis lawsuit does not allege "property damage" under the Policy, and because the Policy Exclusion precludes coverage even if "property damage" *were* alleged, the Court concludes that Defendant has no duty to defend. Plaintiff has failed to present any genuine issue of material fact that would preclude Defendant's entitlement to summary judgment. Because no "property damage" has been established, the issue of whether the damage was caused by an "occurrence" within the duration of the "policy period" is not reached.

### C. Duty to Indemnify

Plaintiff also seeks a declaratory judgment that Defendant is obligated to indemnify it for the Lewis lawsuit.[73] An insurer's duty to indemnify is distinct from its duty to defend.[74] The Fifth Circuit has explained the difference in terms of the evidence that the court can consider at each stage. "While factual inquiries beyond the complaint are prohibited with respect to the duty to defend," the court stated, "they are indispensable in assessing the duty to indemnify."[75] When assessing duty to indemnify, the Court "must apply the policy to the actual evidence adduced at the underlying liability trial together with any evidence introduced in the coverage case."[76]

---

[72] *Jackson v. Lajaunie*, 270 So.2d 859, 864 (La. 1973).
[73] Rec. Doc. No. 1-2, p. 5.
[74] See, *e.g., Elliot v. Cont'l Cas. Co.,* 949 So.2d 1247, 1250 (La.2007) (citing *Am. Home Assurance Co. v. Czarniecki*, 255 La. 251, 230 So.2d 253, 259 (1969)).
[75] *Martco*, 588 F.3d 864, 872 (5th Cir. 2009).
[76] *Id.* at 877.
47923

As of the filing of the instant *Motions*, discovery had not yet commenced in the underlying action.[77] The only update on the Lewis lawsuit provided to the Court in the interim was the April 4, 2018 *Joint Motion to Continue Trial Without Date*[78] wherein the parties advised that "one of the parties in the Underlying Action has recently retained new counsel," which the parties felt "may precipitate settlement discussions and result in a resolution of the Underlying Action."[79] The Court has not been notified of a settlement, trial, or any other resolution to the underlying Lewis lawsuit. Therefore, the evidence that is available for this Court's inquiry into Defendant's duty to indemnify is identical to the evidence it considered regarding Defendant's duty to defend.

The Court *supra* found that Defendant has no duty to defend because Plaintiff has not shown that the allegations in the Lewis lawsuit are "property damage" that would be covered by the Policy; moreover, the Court concluded that the Policy Exclusion would preclude coverage. Since there is no additional evidence before the Court that would change the determination of coverage, the Court concludes that Defendant has no duty to indemnify and is also entitled to summary judgment on this claim.

### D. Extracontractual Damages

Plaintiff also asserts a claim against Defendant for its alleged "arbitrary and capricious denial of coverage and defense," seeking statutory penalties and attorney's fees under La. R.S. 22:1892 and La. R.S. 22:1973. To prevail under these statutes, Plaintiff "has the burden of proving that his insurer (1) received satisfactory proof of loss, (2) failed to pay within the required time, and (3) acted in an arbitrary and capricious

---

[77] Rec. Doc. No. 17.
[78] Rec. Doc. No. 37.
[79] *Id.* at p. 3, ¶ 7.
47923

manner."[80] The law in the Fifth Circuit is also clear that "[t]he statute is not intended to prevent insurers from disputing claims in good faith, including litigating such disputes. A refusal to pay the full amount claimed will not be arbitrary and capricious when the dispute has a good faith basis."[81] Plaintiff's conclusory allegation that "the [Policy] undoubtedly provides coverage and a defense. [Defendant's] denial warrants all statutory penalties in favor of [Plaintiff]"[82] is insufficient to meet its burden of proving an arbitrary and capricious denial of coverage, and it is insufficient to survive summary judgment. Because the Court finds that Defendant had a legitimate basis for its denial of coverage and a right to litigate over coverage in any event, Defendant's *Motion for Summary Judgment* on Plaintiff's claim for damages under La. R.S. 22:1892 and La. R.S. 22:1973 is granted, and Plaintiff's Motion is denied.

### III. CONCLUSION

For the reasons set forth above, the *Motion for Summary Judgment*[83] by Defendant is GRANTED, and the *Motion for Summary Judgment*[84] by Plaintiff is DENIED. *Judgment* shall be entered accordingly.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on September 25, 2018.

*Shelly D. Dick*
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[80] *Dickerson v. Lexington Ins. Co.,* 556 F.3d 290, 297 (5th Cir. 2009).
[81] *Id.* at 299.
[82] Rec. Doc. No. 20-1, p. 15.
[83] Rec. Doc. No. 22.
[84] Rec. Doc. No. 20.
47923